IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JANE SLEEPER, ADMINISTRATOR OF )
THE ESTATE OF GRANT ROLLINS )
SLEEPER, Deceased, )
                                )
      **Plaintiff,** )
                                  )
v.                              )      Civil Action No. 3:12CV441–HEH
                                  )
CITY OF RICHMOND, VIRGINIA, *et al.,* )
                                  )
      **Defendants.** )

## MEMORANDUM ORDER
### (Partial Disqualification of Counsel)

This case arises out of the death of Grant Rollins Sleeper, who was found in a coma while detained at the City of Richmond jail. He died eight days later and his Estate brought this action pursuant to 42 U.S.C. § 1983 for violation of his *Eighth Amendment* rights. At issue are the actions of Defendant C.T. Woody—the Sheriff of the City of Richmond—as well as the actions of several of his subordinates who are named Defendants sued in their individual capacities. Having reviewed the evidence and arguments submitted as part of Defendants' Motions for Summary Judgment (ECF Nos. 101, 103), the Court has concluded that there is not a uniform defense among the jointly-represented Defendants. For the reasons that follow, the Court partially DISQUALIFIES joint counsel for Defendants Sheriff C.T. Woody, Colonel William Burnett, Major Ken McRae, Deputy Kizzie Woodley, Deputy Alexander Jenkins, and Sergeant Grady Perkins.

While Defendant Woody is sued in both his official and individual capacities, Defendants Burnett, McRae, Woodley, Jenkins, and Perkins (collectively the "Subordinate Defendants") are each sued in an individual capacity only. In this posture, it is clear that the interests of the Subordinate Defendants are materially adverse—both to each other and to Defendant Woody. In many instances, the record supports a finding that no jail policy existed to guide the Subordinate Defendants' actions, and so their individual discretion may be at issue. (*See, e.g.,* Woody Dep. at 87:20-88:6; Felix Dep. at 58:3-6, 67:12-18; McRae Dep. at 107:14-17.) In that vein, each Subordinate Defendant may have a distinct set of circumstances supporting a qualified immunity defense. *See Ridpath v. Board of Governors Marshall University*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified Immunity shields government officials performing *discretionary* functions from personal-capacity liability for civil damages under § 1983") (emphasis added). Because they are sued in their individual capacities, each Subordinate Defendant may also be immune for any "good faith actions within the scope of [their] employment." *Dunton v. County of Suffolk*, 729 F.2d 903, 907 (2d Cir. 1984) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 & n.30 (1982); *Pierson v. Ray*, 386 U.S. 547, 555 (1967)).[1]

---

[1] In the absence of a governing policy, rank-and-file deputies may be forced to defend their own discretionary actions. This may place them in the untenable position antagonistic to their superior officers who have testified that specific policies were in place, for example, mandating security checks for inmate well-being. (*Compare* McRae Dep. at 33:22-24 *with* Burnett Dep. at 78:22-79:2.)

A number of courts have recognized that unique problems may arise from joint representation in Section 1983 cases. *See Dunton*, 729 F.2d at 910 (vacating jury verdict where police officer and municipality were jointly represented); *see also Coleman v. Smith*, 814 F.2d 1142, 1147-48 (7th Cir. 1987) (rejecting bright-line prohibition on joint representation while acknowledging need for courts to be mindful of issue). Most notably, in *Dunton*, the Second Circuit reversed a jury verdict based on a conflict of interest arising between a municipality and a police officer in its employ. Because the police officer was sued in his individual capacity, he would be immune from liability for good faith actions taken within the scope of his employment. *Dunton*, 729 F.2d at 907 (citing *Harlow*, 457 U.S. at 818-19 & n.30; *Pierson*, 386 U.S. at 555). In contrast, the municipality could avoid liability if it showed that the officer was acting beyond the scope of his employment. At trial, counsel represented both the municipality and the officer, and the jury returned a verdict against the officer but not the municipality. The Second Circuit concluded that these adverse legal positions mandated disqualification. *Id.* at 910. The Court emphasized that the conflict not only prejudiced the officer, it also improperly benefited the municipality. *Id.*

The case of *Tiffany v. Village of Briarcliff*, No. 99-9505, 2000 U.S. App. LEXIS 15812 (2d Cir. June 29, 2000), highlights the predicaments that may result from such conflicts. There, a district court noted a conflict of interest when joint counsel moved for a new trial after the jury found the municipality liable, but exonerated individual officers. While the motion benefited the municipality, it would also vacate the judgment favoring

his other clients. *Id.* at *5 n.1. The Second Circuit found that the conflict should have been discovered before trial, "express[ing] concern that the court and parties were not cognizant of the conflict" sooner. *Id.*

This Court addressed similar conflicts of interest in *Sanford v. Commonwealth of Virginia*, 687 F. Supp. 2d 591 (E.D. Va. 2009). In that case, a patient at Virginia Commonwealth University ("VCU") Medical Center became delirious and unruly due to medications administered after surgery. *Id.* at 593-94. While several officers with the VCU Police Department ("VCUPD") attempted to restrain him, he died. The same lawyer jointly represented a colonel with VCUPD, a corporal with VCUPD, and several of its rank-and-file officers. *Id.* at 596.

Among other issues in the case, there was evidence that the colonel had failed to provide adequate training to his subordinates. *Id.* at 597. Disputing this evidence, the colonel testified that each officer was specially trained to deal with such situations. Evidence also suggested that several officers were following the corporal's orders to restrain the patient, ultimately leading to his death. *Id.* at 598-99. The Court found that "the mere fact that they were following [the corporal's] instructions would not present a legal defense, but it would present a significant basis for differentiating the reasonableness of the conduct" between the corporal and the subordinate officers. *Id.* at 599. In other words, a subordinate's actions may be more reasonable if he relied on guidance from a superior. Applying *Virginia State Bar Rule of Professional Conduct 1.7* and the comments thereto, this Court found that the situation would "impact [] the

4

conduct of the trial respecting how best to serve the interests of the individual defendants." *Id..* at 603.

Here, Sheriff Woody is sued in an official capacity, effectively asserting municipal liability against him. The motion for summary judgment filed on behalf of all Defendants emphasizes the adequacy of the Sheriff's policies, procedures, and training. (*See* Def.'s Mem. Supp. Mot. Summ. J. at 14-30.) The brief supporting the motion never addresses whether each deputy was acting within the scope of employment—potentially shielding each deputy with immunity. (*Id.*) Similar to *Dunton* and *Tiffany*, the municipal actor benefits from the emphasis on adequate training and policies, while the individual deputies are then shown to have acted less reasonably if they neglected training or governing policies. If a jury finds liability for some, but not all Defendants in this case, counsel will be unable to move for a new trial without harming the prevailing Defendants, as was the problem in *Tiffany*, 2000 U.S. App. LEXIS 15812, at *5 n.1.

The deputies' situation here also parallels that presented in *Sanford.* Each deputy's reliance on training and policy supports the argument that their actions were reasonable. But, if they reasonably relied on deficient policies or training, that could tend to show that any failings of Defendants Woody, Burnett, and McRae were less reasonable. Under these circumstances, it may be a good defense for each deputy to blame his superiors and vice versa. Likewise, those responsible for training and policies may argue that the responsibility actually fell on another in the chain of command. As in

5

*Sanford*, none of these arguments constitute a legal defense, but each argument impacts the reasonableness of individual actions. 687 F. Supp. 2d at 599.

There also exist conflicting positions among Sheriff Woody, Colonel Burnett, and Major McRae. Sheriff Woody claims that he delegated the responsibility for forming jail policy to Colonel Burnett. (Woody Dep. at 88:3-4.) Simultaneously, it remains unclear where Burnett's responsibilities for forming policy end and Major McRae's begin. (*See, e.g.,* McRae Dep. at 33:22-24.) As head of jail operations, Major McRae appears to have most of the responsibility for operational policies. (McRae Dep. at 21:3-6, 24:9-11.) Burnett testified that he delegated policymaking responsibility to Colonel Allmon, who is not a Defendant in this case. (Burnett Dep. at 51:18-21.) It may be appropriate for each of these supervisors to argue that he performed his policy formulation duties, and that it was the others who failed to do so. Counsel cannot make these arguments to the benefit of one client and to the peril of his other clients.

Based on these circumstances, joint counsel cannot adequately present an individualized defense for each employee of the Sheriff's Department. Accordingly, it is hereby ORDERED that counsel for those defendants is DISQUALIFIED from representing any Defendant other than Defendant Woody.[2] The trial in this case and all current deadlines are hereby SUSPENDED pending further order of this Court. Each remaining Defendant has twenty-one (21) days from the entry of this Order to secure

_____

[2] There also exists a possible conflict resulting from current counsels' continued representation of Sheriff Woody, depending upon the extent of privileged information gained from the co-defendants. Current counsel is instructed to review the possibility with substitute counsel before the forthcoming initial pretrial conference.

substitute counsel.  Thereafter, the Court will hold an initial pretrial conference to establish a new discovery schedule, motions deadlines, and a trial date.

The Clerk is directed to send a copy of this Memorandum Order to all counsel of record.

It is SO ORDERED.

/s/

Henry E. Hudson
United States District Judge

Dated: March 12 2013
Richmond, Virginia

7